## Heiser *against* Riehle.

One who enters without colour of title upon unseated land, which has been surveyed and patented to another, acquires a right under the statute of limitations, by twenty-one years' possession, only to so much as he actually cultivates or encloses: but if the owner of the land acknowledges himself out of possession, by suffering the improver to pay the taxes, and have his claim designated by lines distinctly marked upon the ground, and to use the woodland by cutting timber from it for a saw mill, the jury may presume an actual ouster of him who has the patent, and the settler may hold all within his lines under the statute of limitations.

WRIT OF ERROR to the common pleas of *Schuylkill* county.

William Riehle and Susanna Reed against Daniel Heiser, Philip Hoy, Henry Koch, and Jacob Huntzinger. Ejectment for eight hundred acres of land.

Plaintiffs claimed the land in question by virtue of two patents to John Sigmond Riehly, dated the 7th and 16th of Aug. 1786, and showed a regular chain of title from said Riehly.

Defendants relied upon the statute of limitations; and the question

[Heiser v. Riehle.]

for the decision of the court and jury was, how far and to what quantity of land were they protected in by their possession, under the following facts given in evidence, to wit:

20th day of April 1803, John Moyer procured Jesse Evans to make a survey of nine hundred and thirty-four acres and eighteen perches of land, including parts of the two patents to John Sigmond Riehly.

23d April 1803, John Moyer executed a deed for the said nine hundred and thirty-four acres eighteen perches of land, to Philip Hoy, George Orwig and Nicholas Rodebach, for the consideration of 45 pounds, containing the following recital:  It being part of a larger tract of nine thousand two hundred and ten acres, of which John Christ, Esq., then high sheriff of the county of Berks, by virtue of a writ of *fieri facias* issuing out of the supreme court of Pennsylvania, and to him directed, did seize and take in execution, as the property late of Judge James Wilson, Esq. deceased, and by virtue of a certain other writ of *venditioni exponas* issuing out of the same court, and also to him directed, did by public auction or vendue expose the same to sale, and sold the same to him the said John Moyer, and by his deed dated the 10th day of August, in the year of our Lord 1799, did further grant and convey the same unto him the said John Moyer, his heirs and assigns, party to these presents.

A regular chain of title was then shown from George Orwig and Nicholas Rodebach, to the other defendants, Henry Koch and Jacob Huntzinger.

The said survey and title papers were given in evidence to show the extent and nature of their possession, and that they entered under colour of title, and under the supposition that they had title to the nine hundred and thirty-four acres.

Defendants then proved that they entered into the possession of the land in question under the deed of John Moyer.  In 1803 built a house and saw mill, and cleared a few acres of ground, and continued to hold the actual possession thereof by their tenants up to the institution of the present suit; and the land claimed by defendants was assessed for taxes in their names, and in the names of those under whom they claim from the year 1805 to the institution of the present suit: and they continued to exercise acts of ownership thereon, by cutting timber for their saw mill from the date of their purchase to the institution of the suit.

The improvements are admitted to be within the lines of one of the patents to John Sigmond Riehly.

And the survey of Jesse Evans for John Moyer, in 1803, was shown to be well marked on the ground.

There were no improvements ever made on the Riehly surveys, except those made by defendants.

Plaintiffs gave no evidence of the payment of taxes.  Verdict for the plaintiffs, except for the land actually occupied by the defendants.

[Heiser v. Riehle.]

Error assigned.

1. The court erred in charging the jury that there was no ground to presume an ouster of the plaintiffs from the possession of the nine hundred and thirty-four acres tract claimed by defendants; and that there was no pretence of claim by the defendants under the statute of limitations beyond the ground actually occupied by them.

*Bannin,* for plaintiff in error, cited, 1 *Serg. & Rawle* 111; 2 *Serg. & Rawle* 436; 7 *Serg. & Rawle* 129, 173; 10 *Serg. & Rawle* 103, 334.

*Loeser,* for defendant in error, cited, and relied upon, 2 *Serg. & Rawle* 436; 7 *Serg. & Rawle* 129.

The opinion of the Court was delivered by

ROGERS, J.—A person who without title, or colour of title, enters on unseated land which has been surveyed and patented to another, acquires a right under the statute of limitations, by twenty-one years' possession, only to so much as he actually cultivates or encloses, Miller *v.* Shaw, 2 *Serg. & Rawle* 129. The same point was again considered in Royer *v.* Benlow, 10 *Serg. & Rawle* 302, where it was held, that an improver who enters upon land held by another by warrant and survey, is protected, after twenty-one years, by the statute of limitations, as to all that he encloses, or cultivates without enclosure, but not as to those parts which remain in woods, unenclosed, though he uses them for fuel, fences, &c. Although this is the general rule, it at the same time is admitted that this rule is subject to many exceptions; such as the owner confessing himself out of possession of woodland, unenclosed; suffering the improver to pay taxes for it. It is also said in Benlow *v.* Royer, that there may be other cases in which there may be a presumption of ouster, without actual enclosure. If he suffers his adversary, who has designated his claim by marks on the ground, to pay taxes for it, he may be presumed to be ousted. In these cases, when the party is confined to his actual enclosure, he is treated as a trespasser, entering on the land of another without colour or pretence of right. Another reason which has been assigned why a settler should not gain possession by construction beyond the bounds of his enclosure is, that he is under no obligation to take any definite quantity, nor to lay out his land in any particular shape. But do these reasons apply here? The defendants entered into possession of the whole tract under a deed from John Moyer, who claims by virtue of a judicial act, and cannot therefore be looked upon with any propriety as a mere trespasser, or wrongdoer, entering without colour of title. A regular survey was made, and the boundaries of the tract were distinctly marked on the ground. The defendants built a house and saw mill, and cleared a few acres of ground, and continued to hold possession of the whole

VII.—D 2

[Heiser v. Riehle.]

tract within the limits of the survey, up to the institution of the suit. The land claimed was assessed for taxes in their name, and in the name of those from whom they claim, from the year 1805, and no taxes were paid by the plaintiff. And they continued to exercise acts of ownership, by cutting timber for the use of their saw mill (which constituted its great value) from the date of the purchase to the institution of the suit. It has been thought by some that the law has been carried in the cases to which I have referred as far as the true policy will admit; at any rate we are not disposed to extend it. The statute of limitations is a statute of repose, which is entitled to a fair and liberal construction. It is of the first importance that the titles of land should be settled, nor should such possessions be disturbed on slight grounds. There is in this case such a possession as brings the case within it free from the reasons on which the previous cases were ruled. The court therefore erred in instructing the jury that there was no ground to presume an ouster, and that there was no pretence of claim by the defendants under the statute of limitations, beyond the ground actually occupied by them.

Judgment reversed, and a *venire de novo* awarded.